## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **WILLIAM MICHAEL DEWITT,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:25-cv-00560-O-BP** |
| | § | |
| **TRINITY LOGISTICS, INC.,** *et. al.*, | § | |
| | § | |
| **Defendants.** | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Before the Court are the Motion to Dismiss for Failure to State a Claim and appendix that Defendants Trinity Logistics, Inc. ("Trinity"), Burris Logistics, Inc. ("Burris"), Jake Lafferty, Derek Wise, Ethan Trexler, Megan Morgan, and Jennifer Braun (collectively "Defendants") filed on July 14, 2025 (ECF Nos. 14-15), the responses to that motion and appendix that *pro se* Plaintiff William DeWitt filed on July 27, 2025 and August 10, 2025 respectively (ECF Nos. 19, 21), and the reply that Defendants filed on August 11, 2025 (ECF No. 22). Also before the Court are the Motion to Dismiss for Lack of Jurisdiction and appendix that Defendant Jennifer Braun filed on July 14, 2025 (ECF Nos. 16-17), the response that DeWitt filed on July 27, 2025 (ECF No. 20), and the reply Braun filed on August 11, 2025 (ECF No. 23). Finally, DeWitt filed two subsequent responses to each motion on August 30, 2025 (ECF Nos. 24-25).

After considering the pleadings and applicable legal authorities, the undersigned **RECOMMENDS** that Chief United States District Judge Reed O'Connor **DENY** Jennifer Braun's Motion (ECF No. 16), **GRANT** Defendants' Motion (ECF No. 14), and **DISMISS** DeWitt's Complaint.

## I.     BACKGROUND

Michael DeWitt was a sales representative for Trinity Logistics from February 2020 to September 20, 2022. ECF No. 7-1 at 2, 14. A few months into the job, DeWitt shared an Internet meme concerning "talk time" quotas to a Microsoft Teams group chat. *Id.* at 3. One of the group members, Trinity's Director of Sales Jake Lafferty, did not like the meme, and in fact disliked it so much that that evening he called DeWitt and shouted at him on the telephone. *Id.* When that call ended, DeWitt promptly called Trinity's Human Resources Department to report Lafferty's conduct. *Id.* However, the HR Department never followed up. *Id.* DeWitt alleges that following this incident, Director of Operations Derek Wise "began to alienate" DeWitt. *Id.* at 4.

On March 23, 2022, Lafferty and DeWitt had another exchange at DeWitt's desk. *Id.* at 6. According to DeWitt, Lafferty began to encroach on DeWitt's personal space, "corner[ing]" him and becoming "visibly upset and verbally aggressive," as Lafferty repeatedly and loudly made statements like "What'd you say?" and "That's what I thought!" *Id.* at 7. In the weeks that followed, Wise called DeWitt into his office to ask him about the second incident. *Id.* at 9. During that meeting, Wise allegedly told DeWitt that if something like it happened again, Lafferty and DeWitt should just "work it out" behind closed doors. *Id.* According to DeWitt, neither Lafferty nor Wise reported Lafferty's conduct to HR. *Id.*

DeWitt pleads that before the second incident "he had been working successfully independently." *Id.* at 10. But in the days that followed, Lafferty allegedly redirected DeWitt's day-to-day activities under the supervision of another colleague, Ethan Trexler. *Id.* Trexler then allegedly "began to micromanage" DeWitt. *Id.*

DeWitt asserts that Lafferty, Wise, and Trexler each "began to alienate" him, especially after he began working remotely for part of the work week to support his ailing mother. *Id.* at 11-

12. This alienating activity included "restructur[ing] [his] sales strategy," "plac[ing] restrictions on [him] as to what industries [he] could target," and "pressur[ing] [him] to work in the office and provide a schedule to Trexler for each week despite . . . knowing [his] sporadic and stressful circumstances." *Id.* at 12.

On September 13, 2022, allegedly unsolicited, Wise called DeWitt to tell him that "all allegations of harassment must be reported to Trinity's HR department." *Id.* The next day, allegedly following a phone call Wise himself made to corporate, HR representative Megan Morgan called DeWitt to discuss some of DeWitt's concerns. DeWitt explains that in that call he told Morgan he feared "further retaliation" if he went into detail about his complaints, but that he "needed to communicate misconduct by his superiors." *Id.* Morgan responded that she would be in touch to follow up. *Id.* Six days later, DeWitt received an invitation for a Zoom meeting from Morgan. *Id.* at 14. During that call, which Wise joined, Morgan informed DeWitt that he had been terminated from Trinity effective immediately. *Id.* Additionally during the call, Wise allegedly made several defamatory statements about DeWitt. *Id.*

DeWitt says that several other notable events occurred after his termination. First, when he received his personal desk items that had been shipped to him, many were damaged or broken. *Id.* Second, his health and medical insurance coverage immediately ceased upon his termination, and his wife unfortunately suffered a miscarriage. *Id.* at 15. Third, after he began new employment, Trinity threatened him with litigation for allegedly breaching a non-disclosure and non-competition agreement. *Id.* Fourth, a Trinity employee named Jennifer Braun allegedly contacted an employee of DeWitt's new employer, inquiring about DeWitt. *Id.* at 15-16. Finally, "Defendants [] continued to defame [DeWitt's] name and reputation in the logistics industry as a form of retaliation for blowing the whistle on Jake Lafferty and other's behaviors." *Id.*

On January 17, 2025, DeWitt sued Trinity in the 342nd Judicial District Court of Tarrant County, Texas. ECF No. 1. On May 27, 2025, Trinity removed the case to this Court. *Id.* By Order of May 29, 2025, the Court ordered DeWitt to replead. ECF No. 5. In his First Amended Complaint, DeWitt added six defendants and brought ten claims: 1) retaliation under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e-3), 2) whistleblower retaliation under the Sarbanes-Oxley Act (18 U.S.C. § 1514A), 3) workplace harassment / hostile work environment under Title VII, 4) criminal harassment under Texas Penal Code § 42.07, 5) defamation, 6) intentional infliction of emotional distress ("IIED"), 7) trespass to chattels, 8) negligence / conversion, 9) breach of contract, and 10) failure to enforce internal policies. *Id.* at 1, 16-17.

The Court has removal jurisdiction over this case pursuant to 28 U.S.C. § 1332. At the time of filing this action, DeWitt was a citizen of Michigan. *E.g.*, ECF No. 30 at 1-2. No defendant has Michigan citizenship. *E.g.*, ECF No. 31 at 1; ECF No. 32-1 at 1-9. The amount in controversy exceeds $75,000.00. *E.g.*, ECF No. 7 at 20.

On July 14, 2025, Defendants moved to dismiss all of DeWitt's claims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). ECF No. 14. Defendant Jennifer Braun joined that motion subject to her separate, contemporaneously filed motion seeking dismissal from the case for lack of personal jurisdiction. ECF No. 16.

## II.    LEGAL STANDARDS

### A.    Personal Jurisdiction

"When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). A court must have personal jurisdiction over each defendant. *See Rush v. Savchuk*, 444 U.S. 320, 322 (1980). The

Court analyzes whether personal jurisdiction extends to a nonresident defendant by determining "if (1) the long-arm statute of the forum state confers personal jurisdiction over that defendant; and (2) exercise of such jurisdiction by the forum state is consistent with due process under the United States Constitution*." Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999).

The exercise of personal jurisdiction comports with due process when "first, the defendant has the requisite minimum contacts with the forum state and second, requiring the defendant to submit to jurisdiction in the forum state would not infringe on 'traditional notions of fair play and substantial justice.'" *Companion Prop. & Cas. Ins. Co. v. Palermo*, 723 F.3d 557, 559 (5th Cir. 2013) (quoting *Asahi Metal Indus. Co. v. Superior Court of Cal., Solano Cnty.*, 480 U.S. 102, 105 (1987)). These minimum contacts give rise to either general or specific personal jurisdiction. *See Mink v. AAAA Dev. LLC*, 190 F.3d 333, 335 (5th Cir. 1999).

For general jurisdiction, a plaintiff must establish that the defendant's contacts with the forum state are "so 'continuous and systematic' as to render them essentially at home" there. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citation omitted). Contacts that support general jurisdiction are so substantial that a nonresident "would expect to be sued in the state for any claim, including one not arising from his in-state activities." *Taylor v. Alex. Brown & Sons Inc.*, No. 3:02-cv-0818-P, 2002 WL 31245369, at *5 (N.D. Tex. Oct. 2, 2002) (citing *Shaffer v. Heitner*, 433 U.S. 186, 216 (1977)).

Specific jurisdiction is "confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear*, 564 U.S. at 919 (citation and internal quotation marks omitted). The Court examines:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of

action arises out of or results from the defendant's forum-related contacts; (2) whether the exercise of personal jurisdiction is fair and reasonable.

*Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193 (5th Cir. 2019).

"Specific jurisdiction is proper when the plaintiff alleges a cause of action that grows out of or relates to a contact between the defendant and the forum state." *Nunes v. NBCUniversal Media, LLC*, 582 F. Supp. 3d 387, 398 (E.D. Tex. 2022) (citing *Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)). But the minimum contacts required for the Court to exercise personal jurisdiction must be more "than random, fortuitous, or attenuated." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). Instead, they must result from either a purposeful direction of the defendant's activities towards Texas or a purposeful availment of the privilege of conducting activities here. *See Carmona*, 924 F.3d at 193.

When determining whether the exercise of jurisdiction satisfies traditional notions of fair play and substantial justice, the Court balances "the burden on the defendant having to litigate in the forum; the forum state's interest in the lawsuit; the plaintiff's interests in convenient and effective relief; the judicial system's interest in efficient resolution of controversies; and the state's shared interest in furthering fundamental social policies." *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999) (citations omitted).

The Court considers the record at the time of the motion in making the personal jurisdiction determination. *E.g.*, *Quick Technologies, Inc. v. Sage Group PLC*, 313 F.3d 338, 344 (5th Cir. 2002); *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985). Although the Court must accept all uncontroverted allegations in the complaint as true, this standard "does not require the court to credit conclusory allegations, even if uncontroverted." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001) (per curiam).

**B.      Federal Rule of Civil Procedure 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of complaints that fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To state a viable claim for relief, a complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering a Rule 12(b)(6) motion, courts must "take all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff . . . and ask whether the pleadings contain 'enough facts to state a claim to relief that is plausible on its face.'" *Yumilicious Franchise, LLC v. Barrie*, 819 F.3d 170, 174 (5th Cir. 2016) (citing *Twombly*, 550 U.S. at 547).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In ruling on a motion to dismiss, a court may consider documents outside the complaint when they are: (1) attached to the motion to dismiss; (2) referenced in the complaint; and (3) central to the plaintiff's claims. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). Importantly, "[a] statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling." *Jones v. Alcoa, Inc.*, 339 F.3d 359, 365 (5th Cir. 2003).

**C.      *Pro se* parties**

The Court subjects a *pro se* party's pleadings to less rigid analysis than those of a party represented by counsel. "[A] *pro se* complaint, 'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers.'" *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)). However, "even a liberally-

construed *pro se* civil rights complaint must set forth facts giving rise to a claim on which relief may be granted." *Levitt v. Univ. of Tex. at El Paso*, 847 F.2d 221, 224 (5th Cir. 1988) (citing *Bounds v. Smith*, 430 U.S. 817, 825 (1977)). Thus, a court inquires "whether within the universe of theoretically provable facts there exists a set which can support a cause of action under [the] complaint, indulgently read." *Covington v. Cole*, 528 F.2d 1365, 1370 (5th Cir. 1976). However, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to state a claim for relief." *Coleman v. Lincoln Par. Det. Ctr.*, 858 F.3d 307, 309 (5th Cir. 2017) (internal quotation marks omitted).

### D.    Dismissal with or without leave to amend

There exists a "well-established policy that the plaintiff be given every opportunity to state a claim." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977)). It is federal policy to decide cases on the merits rather than technicalities, and thus when possible, the Fifth Circuit has recommended that suits be dismissed without prejudice on Rule 12 motions. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002); *Hines v. Wainwright*, 539 F.2d 433, 434 (5th Cir. 1976) (vacating and remanding a Rule 12(c) dismissal with instructions to the district court to dismiss without, instead of with, prejudice).

Nonetheless, courts may appropriately dismiss an action with prejudice if the court finds that the plaintiff has alleged his best case. *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999). If the court "outline[s] in [its] opinion the deficiencies" of plaintiff's pleading and "plaintiff nevertheless cannot . . . amend to satisfy [the relevant pleading standard,] the court can then dismiss the complaint with the assurance that plaintiff has been shown all the deference he is due." *Sims*

*v. Tester*, No. 3:00-cv-0863-D, 2001 WL 627600, at *2-3 (N.D. Tex. Feb. 13, 2001) (quoting *Barber v. G.H. Rodgers*, No. CA3-84-1750-D (N.D. Tex. Sept. 13, 1988)).

Dismissals for want of personal jurisdiction should be without prejudice. *Am. Realty Tr., Inc. v. Hamilton Lane Advisors, Inc.*, 115 F. App'x 662, 666 (5th Cir. 2004).

## III.    ANALYSIS

### A.    The Court may exercise personal jurisdiction over Jennifer Braun.

As an initial matter, the Texas long-arm statute has the same personal jurisdictional scope as the federal Constitution. *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 214 (5th Cir. 2000) (citing Tex. Civ. Prac. & Rem. Code § 17.042 (West 2025)). Thus, Jennifer Braun moves to dismiss DeWitt's claims against her for lack of personal jurisdiction based on the second prong of the personal jurisdiction analysis—namely that the exercise of such jurisdiction by the forum state be consistent with due process under the Constitution of the United States. *See* ECF No. 16; *Latshaw*, 167 F.3d at 211 (5th Cir. 1999). DeWitt bears the burden of establishing the Court's personal jurisdiction over Braun. *Stuart*, 772 F.2d at 1192.

DeWitt does not carry this burden as to general jurisdiction. Braun argues that "[t]here are no allegations that Braun had continuous and systematic contacts with Texas sufficient for general jurisdiction." ECF No. 16 at 4. By affidavit, Braun averred that Trinity employs her in its Kansas City, Missouri office, she lives in Kansas City, she has never worked for Trinity in a Texas office, she does not have any offices in Texas, she has never worked with DeWitt, and she does not own any property in Texas. ECF No. 7-1 at 2-3. DeWitt does not argue to the contrary. *See generally* ECF Nos. 7-1, 20. Thus, the Court concludes Braun is not subject to general jurisdiction in Texas.

Braun further asserts that "[t]here are also no facts showing that [she] engaged in any conduct in Texas." ECF No. 16 at 4. A strict reading of DeWitt's complaint would tend to support

this view. In the factual section of his complaint, DeWitt mentions Braun's name just once: "Plaintiff affirms he had no clue who Jennifer Braun was and had to research Braun's employment with Trinity Logistics." ECF No. 7-1 at 16. However, in the sentence immediately preceding this one, DeWitt writes that:

> Plaintiff alleges that his current Director of Sales, Scott Matney . . . was a former Director of Sales for [Trinity] at their Kansas City, MO office and [] Trinity's employee reached out to Matney after seeing Matney's new role with Red River Logistics [DeWitt's new employer] to specifically inquire with Matney about his relationship with Plaintiff.

*Id.* The Court thus construes "Trinity's employee" to refer to Braun.

In his response to Braun's Motion, DeWitt argues that "Red River Logistics is headquartered within [the Northern District of Texas]," and because Braun allegedly "contact[ed] Plaintiff's current Texas employer in an apparent attempt to interfere with his livelihood," she "placed herself squarely within the jurisdiction of this Court." ECF No. 20 at 2.

The Court finds that all of DeWitt's claims against Braun stem from this same contact. *See* ECF No. 7-1 at 15-16; ECF No. 20; *Seiferth v. Helicopteros Altuneros, Inc.*, 472 F.3d 266 (5th Cir. 2006) ("A plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim."). Braun initiated this contact, whether a phone call, an email, a LinkedIn message, a letter, or otherwise. *See Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 433-34 (5th Cir. 2014) (declining to find personal jurisdiction where defendant did not initiate a phone call across state lines that the defendant participated in). Further, while Scott Matney was in Kansas City for a time himself, DeWitt alleges (albeit in a late filing) that Matney was a Texas employee of Red River Logistics at the time Braun contacted him. ECF No. 24 at 1-2 at 1-2; ECF No. 7-1 at 15-16. Therefore, because DeWitt's claims against Braun stem from a contact she purposely initiated into Texas, the Court concludes that DeWitt has

sufficiently established Braun's minimum contact with Texas in connection with the claims he makes regarding Braun's contact with DeWitt's current Texas employer.

It is true that "tortious conduct within a forum ensures the existence of contacts, [but] does not always guarantee that such contacts were deliberate." *Carmona*, 924 F.3d at 196; *see also* ECF No. 23 at 3. But DeWitt alleges that Braun reached out into Texas to someone she knew was in Texas, *see* ECF No. 20 at 2. Braun does not deny that she knew Matney was in Texas. *See generally* ECF No. 23. Thus, DeWitt has pleaded that Braun purposely availed herself of Texas.

The burden thus falls to Braun to demonstrate that the Court's exercise of personal jurisdiction over her would be unfair or unreasonable. *Seiferth*, 472 F.3d at 271. At most, she only argues that "exercising personal jurisdiction over [her] would [not] comport with 'traditional notions of fair play and substantial justice.'" ECF No. 16 at 4-5 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)); *see generally* ECF No. 16; ECF No. 23. The Court finds this conclusory argument unconvincing.

Accordingly, the Court concludes that Braun is subject to specific personal jurisdiction in Texas for the purposes of this suit. The undersigned thus **RECOMMENDS** that Chief Judge O'Connor **DENY** Braun's Motion to Dismiss for Lack of Personal Jurisdiction (ECF No. 16).

**B.    DeWitt has not stated a claim for violations of Title VII.**

In his amended complaint, DeWitt sues Trinity and "individual supervisors," whom the Court construes as Lafferty, Wise, and Trexler for "Workplace Harassment / Hostile Work Environment." ECF No. 7-1 at 16. DeWitt also asserts retaliation under Title VII, but he does not specify which defendant is liable. *See Id.* ("Plaintiff reported unlawfully harassment to Human Resources and was subjected to escalating retaliation, ultimately resulting in termination."). Accordingly, the Court construes DeWitt's amended complaint to assert a Title VII retaliation

claim against all Defendants. For the following reasons, the Court should dismiss DeWitt's Title VII claims.

### 1.     <u>Title VII does not impose individual liability</u>.

Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Courts recognize a Title VII claim for a hostile work environment. *E.g.*, *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012).

Title VII defines "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person." *Id.* § 2000e(b). This definition does not include a coworker. Indeed, the Fifth Circuit has repeatedly affirmed that Title VII does not impose individual liability. *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 262 (5th Cir. 1999); *Smith v. Amedisys, Inc.*, 298 F.3d 434, 448 (5th Cir. 2002); *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 381 n.1 (5th Cir. 2003); *Baldwin v. Layton*, 300 F. App'x 321, 323 (5th Cir. 2008). Instead, the court has construed the words "any agent of such a person" to incorporate *respondeat superior* liability into the definition of an employer, but not to create liability for non-employer natural persons. *See Grant v. Lone Star Co.*, 21 F.3d 649, 652 (5th Cir. 1994) (citing *Miller v. Maxwell's Int'l Inc.*, 991 F.2d 583, 584 (9th Cir. 1993)).

Therefore, DeWitt cannot bring a Title VII claim against Lafferty, Wise, Trexler, Morgan, and Braun. Each of these defendants is an individual employee of Trinity. *See generally* ECF No. 7-1; ECF No. 16 at 1. Therefore, the Court should dismiss his claim under Title VII against these non-employer natural persons.

## 2.    DeWitt did not exhaust his administrative remedies.

Procedurally, before a plaintiff may sue under Title VII, he "must exhaust administrative remedies by filing a charge with the [Equal Employment Opportunity Commission]." *Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 337 (5th Cir. 2021) (citing *Davis v. Fort Bend Cnty.*, 893 F.3d 300, 303 (5th Cir. 2018), *aff'd* 587 U.S. 541 (2019)). "Exhaustion occurs when the plaintiff files a timely charge with the EEOC and receives a statutory notice of [his] right to sue." *Tayor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002). This requirement is not judge-made. *See* 42 U.S.C. § 2000e-5(e)(1). Instead, Title VII itself statutorily "imposes a duty on the EEOC to attempt conciliation of a discrimination charge," and "[o]nly if the Commission is 'unable to secure' an acceptable conciliation agreement . . . may a claim against the employer go forward." *Mach Mining, LLC v. E.E.O.C.*, 575 U.S. 480, 486-87 (quoting 42 U.S.C. § 2000e-5(f)(1)). This requires a plaintiff to file his Title VII charge with the EEOC first, and this requirement is mandatory. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 108 (2002) (quoting *Mohasco Corp. v. Silver*, 447 U.S. 807, 826 (1980)) ("[S]trict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law."); *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984) (explaining that the requirement must not be "disregarded by courts out of a vague sympathy for particular litigants").

In no pleading does DeWitt confirm that he filed any charge with the EEOC or state that he filed a charge before he brought his suit in this Court. *See generally* ECF No. 7-1; ECF No. 19; ECF No. 21; ECF No. 25. Defendants plead that they likewise received no notice of any such charge against either Trinity or Burris. ECF No. 14 at 12 n.3.

Courts routinely dismiss claims under Rule 12(b)(6) for a "fail[ure] to allege exhaustion of administrative remedies." *Hoffman v. Boeing*, 596 F.2d 683, 685 (5th Cir. 1979); *Dao v. Auchan*

*Hypermarket*, No. H-95-2619, 1995 WL 902483, at *2 (S.D. Tex. Dec. 5, 1995), *aff'd* 96 F.3d 787 (5th Cir. 1996); *see also Barnes v. 7-Eleven, Inc.*, No. 3:23-cv-01019-E, 2024 WL 628014, at *4 (N.D. Tex. Feb. 14, 2024); *Johnson v. U.S. Postal Serv.*, No. 3:15-cv-1081-L-BK, 2016 WL 791076, at *1-2 (N.D. Tex. Jan. 27, 2016); *Shabazz v. Tex. Youth Comm'n*, 300 F. Supp. 2d 467, 471 (N.D. Tex. 2003). In the absence of facts showing administrative exhaustion, the Court must dismiss DeWitt's Title VII claims unless DeWitt can demonstrate he satisfied the procedural requirements in a timely fashion. *See* 42 U.S.C. § 2000e-5(e)(1).

DeWitt argues that he sufficiently "alleges adverse actions and reputational interference carried out by Defendants" that "would dissuade a reasonable worker from making or supporting a charge of discrimination." ECF No. 25 at 3. He complains of hostile behavior from Lafferty and allegedly retaliatory behavior from his superiors, but he does not allege that one of his protected characteristics motivated these actions. *See id.* § 2000e-2(a)(1) ("race, color, religion, sex, or national origin"). However, Title VII prohibits retaliation for complaints about discrimination based on protected characteristics, *Fort Bend Cnty.*, 587 U.S. at 543, and discrimination under Title VII is specific. It must involve a protected characteristic. 42 U.S.C. § 2000e-2(a)(1). It does not refer to a coworker's alleged harassment based on some kind of antisocial behavior or general enmity. *See Davis v. Dall. Indep. Sch. Dist.*, 448 F. App'x 485, 493 (5th Cir. 2011) (collecting cases).

Therefore, Lafferty allegedly berating DeWitt for sharing a meme or simply because Lafferty did not get along with DeWitt does not, without more, invoke Title VII. Likewise, Lafferty, Wise, Trexler, or anyone else allegedly alienating DeWitt, restructuring his sales strategy, and micromanaging him does not, without a tie to a protected characteristic, invoke Title VII. For

14

these reasons, Chief Judge O'Connor should dismiss DeWitt's Title VII claim against Trinity and Burris.

### C.     DeWitt does not state a claim for Sarbanes-Oxley whistleblower retaliation.

DeWitt brings a claim under the Sarbanes-Oxley Act against Trinity and Burris, apparently alleging that his superiors retaliated against him for reporting Lafferty's conduct. ECF No. 7-1 at 13, 16, 19. The Sarbanes-Oxley Act provides a civil cause of action for individuals retaliated against for providing information (or "blowing the whistle") about instances of fraud or violations of Securities and Exchange Commission regulations. *See* 18 U.S.C. § 1514A(a)(1)-(2). The Act provides "[w]histleblower [p]rotection for [e]mployees of [p]ublicly [t]raded [c]ompanies," defined as companies with classes of securities registered under the Securities Exchange Act of 1934 or companies required to file reports under that Act. *Id.* § 1514A(a). To be covered by Sarbanes-Oxley, a company need not be publicly traded, but it must still at least be a contractor or subcontractor of a publicly traded company. *Lawson v. FMR LLC*, 571 U.S. 429, 459 (2014).

Neither Trinity nor Burris is publicly traded. ECF No. 14 at 15 n.4. DeWitt does not offer any facts showing that they are. *See generally* ECF No. 7-1. Likewise, the record does not reflect that either is a contractor or subcontractor of a publicly traded company. *See generally id.*; *see generally* ECF No. 14. But even if they were, DeWitt does not allege that the conduct for which he blew the whistle was fraud or a securities regulation violation. Instead, he complained about an allegedly hostile workplace involving Lafferty and others. *E.g.*, ECF No. 7-1 at 16 ("a form of retaliation for blowing the whistle on Jake Lafferty and other's behaviors"). These allegations do not state a claim under Sarbanes-Oxley. 18 U.S.C. § 1514A(a)(1)-(2) (outlining the kinds of conduct and violations that for reporting whistleblowers receive protection under Sarbanes-Oxley, including 18 U.S.C. § 1343 (wire fraud)).

DeWitt pleads that Lafferty "encourag[ed] [] lying to clients about the status of carriers," ECF No. 7-1 at 5, but this allegation standing alone does not state a violation of 18 U.S.C. § 1343. First, it is not clear from DeWitt's pleadings that the alleged lying occurred over a wire or otherwise met the elements of wire fraud. 18 U.S.C. § 1343. Second, it appears that Sarbanes-Oxley does not apply to companies like Trinity or Burris.

Third, even if the act did apply, DeWitt does not plead that he reported that Lafferty was lying to customers or that either employer knew he made such a report. *See* ECF No. 7-1 at 4 ("[DeWitt] . . . immediately reported [Lafferty's phone call to DeWitt] to Human Resources."); *id.* at 13 ("[DeWitt] alleges that he communicated to Megan Morgan that he feared further retaliation if he went into further detail about in-office complaints with Megan Morgan."); *id.* ("[DeWitt] alleges he insisted with Megan Morgan that he needed to communicate misconduct by his superiors . . . and Megan Morgan informed [him] that she would be contacting [him] to follow up with [his] concerns."); *id.* at 14 ("Megan Morgan [did] not communicat[e] back with [DeWitt]."). Without facts to show that he reported this particular concern or a like concern, DeWitt does not offer facts to show a Sarbanes-Oxley whistleblower action. *Allen v. Admin. Rev. Bd.*, 514 F.3d 468, 475-76 (5th Cir. 2008) ("To prevail [in a Sarbanes-Oxley whistleblower retaliation action], an employee must prove by a preponderance of the evidence that (1) [he] engaged in protected activity; (2) the employer knew that she engaged in the protected activity . . . .").

Fourth, actions under Sarbanes-Oxley, as with those under Title VII, require filing a complaint before suit, this one with the Secretary of Labor. 18 U.S.C. § 1514A(b)(1)(A); *see also Digit. Realty Tr., Inc. v. Somers*, 583 U.S. 149, 154 (2018); *Lawson*, 571 U.S. at 426-37. The record does not reflect that DeWitt filed such a complaint.

For these reasons, Chief Judge O'Connor should dismiss DeWitt's Sarbanes-Oxley whistleblower retaliation claims against Trinity and Burris.

**D.     DeWitt does not state a claim for harassment under the Texas Penal Code.**

DeWitt brings a "Criminal Harassment" claim "against [the] individual defendants, as applicable under Texas Penal Code § 42.07 and relevant civil analogs." As a general matter, the Texas Penal Code is the state's criminal code, and enforcement of criminal law is the prerogative of the government, not a civil plaintiff. *United States v. Batchelder*, 442 U.S. 114, 124 (1979); *Brawley v. Texas*, No. 3:21-cv-2256-N-BH, 2023 WL 2958614, at *9 (N.D. Tex. Mar. 15, 2023) ("The Texas Penal Code does not bestow a private right of action, so any criminal . . . claim based on it should be dismissed."), *rec. accepted*, No. 3:21-cv-2256-N, 2023 WL 2957825 (N.D. Tex. Apr. 14, 2023); *see also* Tex. Penal Code § 42.07 (West 2025). Accordingly, Chief Judge O'Connor should dismiss any criminal claim.

As for "relevant civil analogs," the Court cannot liberally construe DeWitt's pleadings to state a cause of action. While *pro se* litigants are entitled to a liberal construction of their pleadings, a *pro se* litigant "acquires no greater rights than a litigant represented by a lawyer." *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. Nov. 1981). And the Court "is not required to search for . . . causes of action . . . for *pro se* plaintiffs." *Berry v. LoanCity*, 489 F. Supp. 3d 441, 447 (M.D. La. 2020).

**E.     DeWitt has not stated a claim for defamation.**

DeWitt also brings a defamation claim "against [Trinity] and all individual defendants." Under Texas law, defamation consists of four elements: "(1) the defendant published a false statement; (2) that defamed the plaintiff; (3) with the requisite degree of fault regarding the truth of the statement (negligence if the plaintiff is a private individual); and (4) damages, unless the

statement constitutes defamation per se." *Warren v. Fed. Nat'l Mortg. Assoc.*, 932 F.3d 378, 383 (5th Cir. 2019) (citing *Bedford v. Spassoff*, 520 S.W.3d 901, 904 (Tex. 2017)).

DeWitt does not state facts to support a defamation claim. First, he does not identify what any defendant said or wrote about him that allegedly defamed him. Instead, he only asserts that during the termination call, "[Wise] made a series of defamatory claims while simultaneously gaslighting Plaintiff and attacking his character," ECF No. 7-1 at 14, and that after his termination "Defendants have continued to defame Plaintiff's name and reputation in the logistics industry as a form of retaliation for blowing the whistle on [Lafferty's] and other's behaviors." *Id.* at 16.

"[I]n every defamation case, '[w]hether a[n alleged defamatory statement] is capable of the defamatory meaning alleged by the plaintiff is a question of law to be determined by the court." *Sabal v. Anti-Defamation League*, No. 4:23-cv-01002-O, 2024 WL 1892303, at *4 (N.D. Tex. Apr. 30, 2024) (quoting *Double Diamond, Inc. v. Van Tyne*, 109 S.W.3d 848, 854 (Tex. App.—Dallas 2003, no pet.)). But if the plaintiff does not state what the alleged statement was, then the Court cannot perform its task. Simply claiming defamation occurred without more does not satisfy the basic pleading requirements under the Federal Rules because it does not provide a plausible basis for the claim and does not raise an allegation above the speculative level. *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678.

Notwithstanding this deficiency, Defendants also point out that the statute of limitations for a defamation claim in Texas is one year and argue that DeWitt brought his suit far past that deadline. ECF No. 14 at 19; Tex. Civ. Prac. & Rem. Code § 16.002(a) (West 2025) ("A person must bring suit for . . . libel[] [or] slander . . . not later than one year after the day the cause of action accrues."). DeWitt counters that his "claims are preserved under the doctrine of equitable tolling and continuing tort." ECF No. 19 at 2. He pleads in support that he "has suffered ongoing

harm due to the Defendants' actions, including interference with employment, financial instability, emotional distress, and frequent forced relocations." *Id.*

As this is a diversity case, the Court applies Texas state law regarding statutes of limitations. *Vaught v. Showa Denko K.K.*, 107 F.3d 1137, 1145 (5th Cir. 1997) (citing *Walker v. Armco Steel Corp.*, 446 U.S. 740, 750-53 (1980)). This also means that the Court applies Texas state law governing the rules for tolling the limitation period. *Hensgens v. Deere & Co.*, 869 F.2d 879, 880 (5th Cir. 1989); *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 764 (5th Cir. 2015).

### 1.    Statements made on the September 20, 2022 termination call are barred.

On September 20, 2022, Trinity employees terminated DeWitt, and Wise allegedly made disparaging statements about him. ECF No. 7-1 at 14. A defamation claim generally accrues "when the defamatory statement is published or circulated." *Anderson v. Octapharma Plasma, Inc.*, No. 3:19-cv-2311-D, 2020 WL 7245075, at *14 (N.D. Tex. Dec. 9, 2020) (internal quotation marks omitted) (citing *Wheeler v. Methodist Hosp.*, 95 S.W.3d 628, 636 (Tex. App.—Houston [1st Dist.] 2002, no pet.). Publication means that the allegedly "defamatory statements are communicated orally, in writing, or in print to some third person who is 'capable of understanding their defamatory import and in such a way that the third person did so understand.'" *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 579 (Tex. 2017) (quoting *Austin v. Inet Techs., Inc.*, 118 S.W.3d 491, 496 (Tex. App.—Dallas 2003, no pet.)).

Absent tolling, the statute of limitations required DeWitt to bring a defamation claim regarding any allegedly defamatory statements on the September 20, 2022 call by September 20, 2023. DeWitt brought his suit on January 17, 2025. ECF No. 1-3 at 2.

However, DeWitt asserts that the Court should equitably toll the limitations period. ECF No. 19 at 2. "The doctrine of equitable tolling preserves a plaintiff's claims when strict application of the statute of limitations would be inequitable." *Lambert v. United States*, 44 F.3d 296, 298 (5th Cir. 1995). However, "Texas courts sparingly apply equitable tolling" and tend to decline it to litigants who merely hope "'to avoid the consequences of their own negligence.'" *Myers v. Nash*, 464 F. App'x 348, 349 (5th Cir. 2012) (quoting *Hand v. Stevens Transp., Inc.*, 83 S.W.3d 286, 293 (Tex. App.—Dallas 2002, no pet.). Texas courts apply equitable tolling "in situations where a claimant actively pursued his judicial remedies but filed a defective pleading during the statutory period, or where a complainant was induced or tricked by his adversary's misconduct into allowing filing deadlines to pass." *Bailey v. Gardner*, 154 S.W.3d 917, 920 (Tex. App.—Dallas 2005, no pet.). "Equitable tolling is inappropriate . . . 'when the party seeking relief has an adequate legal or statutory remedy to avoid the consequences of the statute of limitations.'" *Klocke v. Watson*, No. 22-10348, 2023 WL 2823060, at *5 (5th Cir. 2023) (quoting *Lambert v. United States*, 44 F.3d 296, 298 (5th Cir. 1995)).

DeWitt cites several cases that he contends support equitable tolling here, ECF No. 19 at 2, but those cases do not refute the point that "[e]quitable tolling is a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs." *Wallace v. Kato*, 549 U.S. 384, 396 (2007). As DeWitt correctly argues, the Court in *Wallace* explained that "it is 'the standard rule' that a cause of action first accrues 'when the plaintiff has a 'complete and present cause of action.'" ECF No. 19 at 2 (citing *Wallace*, 549 U.S. at 388 (internal quotation marks omitted)). But this wording is simply a turn of phrase, one with the same meaning as "a right accrues when it comes into existence." *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 810 (2024) (quoting *United States v. Lindsay*, 346 U.S. 568, 569 (1954)). And

20

Texas law is clear that a defamation claim generally accrues, comes into existence, and becomes a complete and present cause of action when an allegedly defamatory statement is published or circulated. *Wheeler*, 95 S.W.3d at 636. In this case, that happened on September 20, 2022.

Additionally, Texas law recognizes an exception to the limitations timeline called the "discovery rule" which tolls the statute of limitations "where 1) 'the nature of the injury incurred is inherently undiscoverable,' and 2) 'the evidence of injury is objectively verifiable.'" *Coll. Network, Inc. v. Moore Educ. Publishers, Inc.*, 378 F. App'x 403, 408 (5th Cir. 2010) (quoting *S.V. v. R.V.*, 933 S.W.2d 1, 6 (Tex. 1996)). But application of this rule is the "rare circumstance[]." *Mustafa v. Americo Energy Res., LLC*, 650 S.W.3d 760, 764 (Tex. App.—Houston [14th Dist.] 2022, pet. denied) (internal quotation marks omitted) (quoting *Cosgrove v. Cade*, 468 S.W.3d 32, 36 (Tex. 2015)); *Via Net v. TIG Ins.*, 211 S.W.3d 310, 313 (Tex. 2006) (per curiam) ("[W]e have restricted the discovery rule to exceptional cases to avoid defeating the purposes behind the limitations statutes."). And "[a]n injury is not inherently undiscoverable when it could be discovered through the exercise of reasonable diligence." *Mustafa*, 650 S.W.3d at 764 (quoting *BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 66 (Tex. 2011)).

Typically, "[w]hen a plaintiff discovers or should have discovered the cause of his injury and whether a particular plaintiff exercised due diligence in so discovering are questions of fact." *Pirtle v. Kahn*, 177 S.W.3d 567, 572 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (citing *Childs v. Haussecker*, 974 S.W.2d 31, 44 (Tex. 1998)). "But if no reasonable person could conclude otherwise, 'the commencement of the limitations period may be determined as a matter of law.'" *Berrios v. Cox*, No. EP-23-cv-63-KC, 2024 WL 89453, at *9 (W.D. Tex. Jan. 8, 2024) (quoting *Mustafa*, 650 S.W.3d at 765). "A motion to dismiss may be granted on a statute of limitations defense where it is evident from the pleadings that the action is time-barred, and the

pleadings fail to raise some basis for tolling." *Taylor v. Bailey Tool Mfg. Co.*, 744 F.3d 944, 946 (5th Cir. 2014) (citing *Jones*, 339 F.3d at 366)).

Here, Wise made the allegedly defamatory statements in question during a Zoom call in which DeWitt participated. ECF No. 7-1 at 14 ("[DeWitt] alleges in the call [Wise] made a series of defamatory claims while simultaneously gaslighting [DeWitt] and attacking his character."). Any argument that DeWitt did not recognize that he had been allegedly defamed then and there on the call is unpersuasive. Even if he did not recognize as much, however, without more information about the statements' content or DeWitt's circumstances, it is implausible that DeWitt required until January 17, 2024 at the latest to understand that what Wise said had been defamatory.

Therefore, regarding the alleged defamatory statements Wise made on the call, the Court concludes that the discovery rule does not apply. Similarly, DeWitt does not plead a sufficient basis to invoke equitable tolling for a claim stemming from those statements. Nor does he offer any insight into how he "diligently pursue[d] [his] rights" or into "extraordinary circumstances [that] prevent[ed] timely filing," and he makes no allegation that "a defendant fraudulently conceal[ed] wrongdoing." ECF No. 19 at 3-4.

Finally, DeWitt also argues that the "continuing tort doctrine" should toll the limitations period in his case. ECF No. 19 at 3. This doctrine provides another exception to the general rule that the limitations period begins to run when the claim accrues. "A continuing tort involves wrongful conduct inflicted over a period of time that is repeated until desisted, and each day creates a separate cause of action." *First Gen. Realty Corp. v. Md. Cas. Co.*, 981 S.W.2d 495, 501 (Tex. App.—Austin 1998, pet. denied). In such a way, "[a] claim for a continuing tort does not accrue until the defendant's wrongful conduct ceases." *Rincones*, 520 S.W.3d at 592. But to the extent DeWitt argues that any reputational harm he first suffered from Wise's words in the Zoom call

continues to harm him past the one-year limitations period, he is without recourse under the continuing tort doctrine. This is because there is a legal difference between "repeated injury proximately caused by repetitive wrongful or tortious acts and [a] continuing injury arising from one wrongful act." *Rogers v. Veigel Inter Vivos Tr. No. 2*, 162 S.W.3d 281, 290 (Tex. App.—Amarillo 2005, pet. denied). "While the former evinces a continuing tort, the latter does not." *Id.*

DeWitt offers nothing to suggest repeated distinct injuries that Wise or any other defendants caused as opposed to alleged continuing injuries arising from the singular Zoom call. The continuing tort doctrine is resultantly inapplicable. *See Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826, 828 (Tex. 1990) ("The fact that damage may continue to occur for an extended period after accrual does not prevent limitations from starting to run.").

With no basis to toll the statute of limitations, the Court concludes that the statute of limitations for any claim accrued by Wise's statements on the Zoom call began to run on September 20, 2022 and lapsed on September 20, 2023. Because DeWitt sued on January 17, 2025, any defamation claim based on those statements is barred as a matter of law.

**2.      Other alleged defamatory statements are unavailing to state a claim.**

DeWitt also asserts that "Defendants have continued to defame [his] name and reputation in the logistics industry as a form of retaliation for blowing the whistle on [Lafferty's] and other's behaviors." ECF No. 7-1 at 16. However, this statement does not plead sufficient factual details to state a claim for defamation. The bare allegation that "Defendants have continued to defame Plaintiff's name and reputation," without showing how they did so, what they said, or who said what is insufficient to state a claim. *See Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678.

At most, DeWitt writes in his first response to Defendants' motion to dismiss that "Jennifer Braun's contact with [his] current employer and supervisor constitutes a new and independent

tortious act, renewing the period of limitations." ECF No. 19 at 3. DeWitt pleads in conclusory fashion that "Defendants have continued to defame [his] name and reputation" after DeWitt's termination. *See generally id.* However, DeWitt states no facts setting out a defamatory statement that Braun or any other Defendant made to his current employer.

If Braun made any allegedly defamatory statements about DeWitt to DeWitt's new employer in January 2025, the statute of limitations would not bar a defamation claim accrued from those statements. However, in the absence of other facts, DeWitt has not stated a defamation claim against Braun. And in the absence of any facts to support a theoretical defamation claim against Lafferty, Trexler, or Morgan, or an unbarred defamation claim against Wise, the Court concludes the same result is applicable to them. DeWitt has not stated a claim.

Accordingly, DeWitt has not stated a defamation claim in this case. Chief Judge O'Connor should dismiss DeWitt's defamation claim.

### F.    DeWitt has not stated a claim for IIED.

DeWitt also brings a claim for IIED against all defendants. ECF No. 7-1 at 16. Texas law considers an IIED claim a personal injury claim, and the statute of limitations for personal injury actions in Texas is two years. *Gaither v. Bank of Am., N.A.*, No. 4:25-cv-171-BJ, 2025 WL 2684347, at *6 (N.D. Tex. July 22, 2025) (citing Tex. Civ. Prac. & Rem. Code § 16.003 (West 2025)). Absent an applicable tolling principle, this means that any event for which an IIED claim accrued needs to have occurred on or before January 17, 2023 for DeWitt to have brought a timely IIED claim.

Additionally, Texas law regards IIED as "first and foremost[] a gap-filler tort." *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004) (internal quotation marks omitted). Texas courts designed that tort "'to supplement existing forms of recovery by providing a cause

of action for egregious conduct' that might otherwise go unremedied." *Id.* (quoting *Standard Fruit & Vegetable Co. v. Johnson*, 985 S.W.2d 62, 68 (Tex. 1998)).

Because of this supplementary function, an IIED claim "cannot be maintained when the risk that emotional distress will result is merely incidental to the commission of some other tort." *Standard Fruit & Vegetable Co.*, 985 S.W.2d at 68. Moreover, when a plaintiff pleads an IIED claim "based entirely upon the same factual allegations underlying" another claim, that other claim "cannot give rise to a separate IIED claim." *Jones v. Performance Serv. Integrity*, 492 F. Supp. 2d 590, 595 (N.D. Tex. 2007). And the deficient IIED claim "must be dismissed." *Id.* (citing *Johnson v. Blue Cross/Blue Shield of Tex.*, 375 F. Supp. 2d 545, 549-50 (N.D. Tex. 2005)). Therefore, because DeWitt has not alleged facts underlying a viable IIED claim that are distinct from the facts underlying his other claims in his case, *see generally* ECF No. 7-1, his IIED claim is further barred as a matter of law.

Even assuming that his IIED claim were viable, DeWitt would have to state facts to support the four elements of an IIED cause of action: (1) the defendant acted intentionally or recklessly, (2) the defendant's conduct was extreme and outrageous, (3) the defendant's actions caused the plaintiff emotional distress, and (4) the emotional distress suffered by the plaintiff was severe. *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995). Extreme and outrageous conduct is that which is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Twyman v. Twyman*, 855 S.W.2d 619, 621-22 (Tex. 1993). "Whether a defendant's conduct is extreme or outrageous enough to permit recovery is a matter within the province of the court." *Von Beck-Lutes v. Arning*, 484 F. Supp. 2d 585, 588 (W.D. Tex. 2007) (citing *Atkinson v.*

25

*Denton Publ'g Co.*, 84 F.3d 144, 151 (5th Cir. 1996)); *GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 616 (Tex. 1999).

DeWitt alleges that after his termination from Trinity, while Wise "communicated to [him] that [he] could pick up his private property from Trinity's office," DeWitt's personal belongings nevertheless arrived in the mail "without consent." ECF No. 7-1 at 14. According to DeWitt, the selected packaging did not include any precautionary messages indicating that the contents were fragile, and several of his personal items were broken upon arrival. *Id.* He thus alleges that "Trexler, Lafferty, and Wise acted with malice to inflict emotional damages and through intent or neglect or both, damaged [DeWitt's] sentimental private property." *Id.*

Defendants argue that "there is nothing in [DeWitt's] Complaint that comes even remotely close to the extreme and outrageous threshold. At their core, [his] allegations amount to nothing more than his perception that he was harassed by his supervisor and his disagreement with the Company's decision to terminate his employment." ECF No. 14 at 20 (internal quotation marks omitted). However, the plain text of DeWitt's complaint does not support this characterization. DeWitt does plead that at least some of the Defendants harmed some of his sentimental personal effects, including "4th generation family heirlooms." ECF No. 15-1 at 2. That conduct is distinct from both alleged harassment and Trinity's decision to terminate DeWitt's employment.

All the same, even if these facts could constitute an IIED claim by themselves, which the Court does not today hold, DeWitt knew about his ruined personal effects no later than September 22, 2022 when he emailed Morgan to complain about the way his property had been handled. ECF No. 15-1 at 2; *see also* ECF No. 7-1 at 14 (DeWitt referencing the relevant email in his complaint). And thus, the two-year statute of limitations for an IIED in Texas required DeWitt to have brought any IIED claim predicated on his broken sentimental items no later than September 22, 2024.

Tolling principles do not apply to DeWitt's IIED claim for the same reasons they do not save his untimely tort claims in general. DeWitt has neither demonstrated why he was incapable of bringing his claim earlier than he did or explained why the Court should classify a singular poor decision to insufficiently package fragile items as a continuing tort. The statute of limitations bars an IIED claim predicated on these facts. Moreover, to the extent DeWitt attempts to use other facts in his complaint to underly his IIED claim, the passage of time similarly bars those claims.

First, it is indisputable that the conduct of which DeWitt complains occurred during his employment at Trinity or at the time of his termination on September 22, 2022. This included Lafferty's conduct (the hostile phone call [ECF No. 7-1 at 3], alleged promotion of "unethical practices," [*id.* at 5], in-office profanity [*id.*], verbal confrontation and physical intimidation [*id.* at 6-7], and restructuring of DeWitt's sales strategy [*id.* at 12]); Wise's conduct (the allegedly defamatory statement and gaslighting [*id.* at 14]); Trexler's conduct (the alleged micromanaging [*id.* at 10] and requiring DeWitt to enter all his receipts [*id.* at 14]); Morgan's failure to follow up with DeWitt before the ill-fated Zoom call (*id.* at 13); the alleged alienation from various Defendants (*id.* at 4, 12-13); the alleged failure of various Defendants to follow internal policies and procedures (*id.* at 9, 12); and the alleged pressuring from various Defendants for DeWitt to work in office while his mother suffered health issues (*id.* at 10-12) *See generally id.* Accordingly, the two-year period to file a claim based on these actions occurred at the latest on September 20, 2024. Tolling does not apply to these claims.

Second, DeWitt also pleads that ". . . [Trinity] immediately cut-off [sic] [his] health insurance as part of [his] termination. . . . [He] affirms his wife, Jenice DeWitt, was included in [his] health insurance plan and also lost medical insurance coverage. . . . [he] affirms his wife,

Jenice DeWitt, suffered a miscarriage of what would have been their first born shortly after [his] termination with [Trinity]." ECF No. 7-1 at 15.

To the extent DeWitt seeks to base his IIED claim on these facts, his attempt is unavailing. While DeWitt does not plead precisely when these events occurred, the Court could easily construe "immediately cut[]off" and "shortly after Plaintiff's termination" to mean sometime in September or October 2022, and thus long before January 17, 2023, and barred by the statute of limitations. *Id.* But statute of limitations aside, "[a] claim for IIED will not lie if the intent or primary consequences of the defendant's conduct was not emotional distress." *Hernandez v. Office Depot, Inc.*, No. H-04-2630, 2005 WL 2095102, at *7 (S.D. Tex. Aug. 30, 2005) (citing *GTE Sw., Inc.*, 998 S.W.2d at 611)). And "'[o]rdinary employment disputes' will not support a claim for intentional infliction of emotional distress' because the conduct complained of is not sufficiently extreme and outrageous." *Hughes Training, Inc. v. Cook*, 254 F.3d 588, 594 (5th Cir. 2001) (citing *GTE Sw., Inc.*, 998 S.W.2d at 612). Very few incidents in the workplace will lead to a finding of extreme and outrageous conduct because Texas courts have recognized that "to properly manage its business, an employer must be able to supervise, review, criticize, demote, transfer, and discipline employees." *GTE Sw., Inc.*, 998 S.W.2d at 612.

Here, Trinity immediately canceled DeWitt's health insurance upon his termination. ECF No. 7-1 at 15. But as a matter of law, this is not extreme and outrageous. Employer-provided health insurance is a common benefit of employment, and the cancellation of an employee's coverage upon that employee's termination is an ordinary employment matter hardly "so extreme in degree, as to go beyond all possible bounds of decency." *GTE Sw.*, 998 S.W.2d at 611; *Twyman*, 855 S.W.2d at 621; *see also Nordhoff v. Haverty's Furniture Cos.*, No. 3:96-cv-2241-BC, 1997 WL 667888, at *9-10 (N.D. Tex. Oct. 17, 1997) (finding that canceling employee's health insurance

benefits after termination was not extreme and outrageous); *Rogers v. Orleans Par. Sheriff Off.*, No. 22-5303, 2024 WL 1198425, at *4 (E.D. La. Mar. 20, 2024) (finding that a cancellation of health insurance while employee was on leave was not extreme conduct).

While Mrs. DeWitt tragically suffered a miscarriage after DeWitt lost his job, DeWitt offers no facts to show that any Defendant intended that result by ending DeWitt's health insurance coverage. Nor indeed does DeWitt indicate if or how Mrs. DeWitt's miscarriage was in any way causally linked to Trinity's termination of his coverage. *See* ECF No. 7-1 at 15. Therefore, the Court concludes that DeWitt's IIED claim is similarly unsupportable on these facts.

Third, the last potential ground for IIED is Braun's alleged contact with DeWitt's new Director of Sales in January 2025. *See id.* at 16 (bringing an IIED claim against all defendants, including Braun). But for reasons previously explained, DeWitt has not stated facts to show what contact Braun may have had with DeWitt's new employer, and thus he has resultantly failed to even hint at what could have been extreme and outrageous about Braun's conduct in this case. To the extent he argues that her alleged defamation, harassment, or retaliation was extreme and outrageous, he cannot maintain an IIED claim predicated on the same facts as another claim. *Jones*, 492 F. Supp. 2d at 595.

For these reasons, DeWitt has not stated a claim for IIED against any defendant. Chief Judge O'Connor should dismiss DeWitt's IIED claim.

### G.    DeWitt has not stated a claim for trespass to chattels.

DeWitt also brings a claim for trespass to chattels against "[Trinity] and its supervisors who interfered with [his] personal property." ECF No. 7-1 at 16. In Texas, trespass to chattels is "the wrongful interference with the use or possession of another's property." *Sw. Airlines Co. v. Farechase, Inc.*, 318 F. Supp. 2d 435, 442 (N.D. Tex. 2004) (citing *Omnibus Int'l v. AT&T, Inc.*,

111 S.W.3d 818, 826 (Tex. App.—Dallas 2003, pet. granted, judgm't vacated w.r.m.)). "Liability does not attach, unless the wrongful detention is accompanied by actual damages to the property or deprives the owner of its use for a substantial period of time." *Zapata v. Ford Motor Credit Co.*, 615 S.W.2d 198, 201 (Tex. 1981). DeWitt alleges that his supervisors, and through them Trinity, shipped him his personal items without his consent, resulting in irreversible damage to his effects. ECF No. 7-1 at 14. From the face of DeWitt's complaint, DeWitt pleads sufficient facts to underly a claim for trespass to chattels.

However, Texas law is clear that "a person must bring suit for trespass for injury . . . to the property of another . . . not later than two years after the day the cause of action accrues." Tex. Civ. Prac. & Rem. Code § 16.003(a) (West 2025). An action for permanent injury to property "accrues and the statute of limitations begins to run upon discovery of the first actionable injury." *Mitchell Energy Corp. v. Bartlett*, 958 S.W.2d 430, 436 (Tex. App.—Fort Worth 1997, pet. denied) (internal quotation marks omitted). Here, the record demonstrates that, at the latest, DeWitt knew by September 22, 2022 that all or some Defendants had harmed his personal items. ECF No. 15-1 at 2. Accordingly, the two-year statute of limitations for a trespass to chattels claims required DeWitt to have brought that claim no later than September 22, 2024.

For reasons the Court has previously explained, tolling principles do not excuse DeWitt's late filing. DeWitt knew someone had mishandled his property when he discovered it broken, and he has neither demonstrated why he was incapable of bringing his claim earlier than he did or explained why the Court should classify the broken items shipped to him as a continuing tort. The statute of limitations bars a trespass to chattels claim predicated on these circumstances, and DeWitt has therefore not stated a claim. *See Jones*, 339 F.3d at 365 ("A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the

action is barred and the pleadings fail to raise some basis for tolling."). Chief Judge O'Connor should dismiss DeWitt's trespass to chattels claim.

### H.    DeWitt has not stated a claim for negligence or conversion.

DeWitt also brings a claim for "Negligence / Conversion" against "[Trinity] for failure to protect and deliberate destruction of Plaintiff's property." ECF No. 7-1 at 16. But claims premised on the same damaged property underlying DeWitt's trespass to chattels claim suffer a similar bar. "[A] person must bring suit for trespass for injury to the estate or to the property of another, conversion of personal property, [or] taking or detaining the personal property of another . . . not later than two years after the day the cause of action accrues." Tex. Civ. Prac. & Rem. Code § 16.003(a) (West 2025); *Barr v. AAA Tex., LLC*, 167 S.W.3d 32, 38 (Tex. App.—Waco 2005, no pet.) ("The statute of limitations for negligence claims involving damage to personal property is two years.").

Because this claim also concerns the property DeWitt realized no later than September 22, 2022 had been damaged, the claim expired after two years on September 22, 2024. *See* ECF No. 7-1 at 14. Because DeWitt brought the claim on January 17, 2025, Chief Judge O'Connor should dismiss it. *See Jones*, 339 F.3d at 365 ("A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling.").

### I.    DeWitt does not state a claim for breach of contract.

DeWitt also brings a claim for breach of contract against "[Trinity] for violating agreed employment terms, policies, or implied contracts." ECF No. 7-1 at 16. The elements of a breach of contract claim in Texas are: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the

plaintiff resulting from defendant's breach. *Williams v. Wells Fargo Bank, N.A.*, 884 F.3d 239, 244 (5th Cir. 2018) (citing *Caprock Inv. Corp. v. Montgomery*, 321 S.W.3d 91, 99 (Tex. App.—Eastland 2010, pet. denied)).

Defendants argue that "[DeWitt's] Complaint fails to mention the existence of any contract." ECF No. 14 at 22. A review of DeWitt's complaint corroborates that characterization. *See generally* ECF No. 7-1. At most, DeWitt pleads that "he and other new hires went through extensive Human Resources training during [DeWitt's] training period that included topics such as workplace harassment and company policy related to harassment by superiors and company protection of [] whistleblower[s]." *Id.* at 2. He also pleads that "according to [Trinity's] policies and protocol, th[e Lafferty incident] should have been immediately reported to Trinity's Human Resources department . . . but intentionally was not," *id.* at 9, and that "Megan Morgan specifically communicated to [DeWitt] that Trinity had a strict no-retaliation policy in place that would protect a whistleblower." *Id.* at 13.

But these facts do not show the existence of a contract. To the extent DeWitt alleges that Trinity breached a contract because it did not comport with company policies, this kind of allegation is insufficient to state a breach of contract claim in Texas. *See Adams v. Mut. of Omaha Ins. Co.*, No. 3:13-cv-4881-D, 2014 WL 1386563, at *4 (N.D. Tex. Apr. 9, 2014) (collecting cases). Under Texas law, "a statement of company policy, unaccompanied by an express agreement, does not create contractual rights." *Id.* (quoting *Day & Zimmerman, Inc. v. Hatridge*, 831 S.W.2d 65, 69 (Tex. App.—Texarkana 1992, writ denied)). DeWitt has not pleaded that he had any kind of express agreement with Trinity to enforce company policies regarding workplace harassment, Human Resources reporting, or whistleblower protections. *See generally* ECF No. 7-

1. Instead, in only referencing general company policies, these allegations do not establish that a contract existed or that Trinity breached such a contract.

To the extent DeWitt bases his breach of contract claim on Trinity allegedly terminating him without sufficient cause, Texas law is well-settled that "absent a specific agreement to the contrary, employment may be terminated by the employer or the employee at will, for good cause, bad cause, or no cause at all." *Montgomery Cnty. Hosp. Dist. v. Brown*, 965 S.W.2d 501, 502 (Tex. 1998). And "a company policy does not modify an employee's at-will employment status unless it expressly and unequivocally evidences an intent to limit the conditions under which an employee may be terminated." *Adams*, 2014 WL 1386563, at *4 (citing *Seals v. City of Dall.*, 249 S.W.3d 750, 757 (Tex. App.—Dallas 2008, no pet.)). DeWitt pleads no facts to support such a claim.

Finally, DeWitt also argues that "[Trinity] . . . violat[ed] . . . implied contracts," ECF No. 7-1 at 16, but he has not demonstrated a plausible basis for this allegation. The mere existence of a company policy does not by itself constitute an implied contract. *See Fort Worth Transp. Auth. v. Thomas*, 303 S.W.3d 850, 859 n.17 (Tex. App.—Fort Worth 2009, pet. denied) ("[A]s a general rule, employee handbooks and policy manuals constitute general guidelines in the employment relationship and do not create implied contracts between the employer and employee that alter the at-will relationship.").

Accordingly, absent an express agreement in which Trinity agreed to be bound by its company policies, an agreement that it could not terminate DeWitt without certain conditions being met, or some evidence of an implied contract, the Court concludes that DeWitt has not stated a claim for breach of contract under Texas law. Chief Judge O'Connor should dismiss DeWitt's breach of contract claim.

### J.    DeWitt has not stated a claim for failure to enforce internal policies.

Finally, DeWitt also brings a claim against "[Trinity] and [Burris] for negligently and intentionally disregarding policies meant to protect employees from misconduct," which he refers to as a claim for "Failure to Enforce Internal Policies." ECF No. 7-1 at 17. The Court is not aware of any such cause of action under Texas or federal law. While DeWitt cites two cases that he contends support this cause of action, ECF No. 19 at 4, neither is availing.

The first appears to be *Drennan v. Community Health Investment Corp.*, 905 S.W.2d 811 (Tex. App.—Amarillo 1995, writ denied), which DeWitt cites by name but cites as a case from the Eastern District of Texas located at 905 F. Supp. 2d 614. ECF No. 19 at 4; ECF No. 25 at 5. However, the case located at that position in the Federal Supplement is *Wells Fargo Bank, North America v. CCC Atlantic, LLC*, 905 F. Supp. 2d 604, 614 (D. N.J. 2012), and it is not clear to what case decided in the Eastern District of Texas DeWitt refers. Accordingly, the Court analyzes the *Drennan* case from the Amarillo Court of Appeals. *Drennan* was a medical malpractice case that involved in part analyzing whether the relevant parties had followed or violated the Texas Administrative Code's rules for pharmaceutical distribution. *Drennan*, 905 S.W.2d at 824. DeWitt's contention that *Drennan* stands for the proposition that "[e]mployers can be liable where they fail to enforce internal compliance policies against harassment or retaliation," ECF No. 25 at 5, is plainly inaccurate. The Court finds *Drennan* inapposite and unconvincing.

The second case appears to be *Watkins v. Tex. Dep't of Criminal Justice*, 269 F. App'x 457 (5th Cir. 2008), which DeWitt also cites by name, but as a case from the Southern District of Texas located at 269 F. Supp. 2d 913. ECF No. 19 at 4; ECF No. 25 at 5. However, the case located at that position in the Federal Supplement is *Ayers v. C & D General Contractors*, 269 F. Supp. 2d 911, 913 (W.D. Ky. 2003). It is possible that DeWitt meant to refer to *Watkins v. Tex. Dep't of*

34

*Criminal Justice*, No. H-03-5698, 2006 WL 1581833 (S.D. Tex. 2006), which the plaintiff in that case appealed to the Fifth Circuit, who affirmed at 269 F. App'x 457. The Court analyzes both the district court and appellate court decisions in *Watkins*. The appellant-plaintiff in *Watkins* did not bring a claim for failure to enforce internal policies, but rather claims for a hostile work environment, disparate treatment, and retaliation in violation of Title VII as well as defamation and IIED claims under state law. *Watkins*, 2006 WL 1581833 at *4-12; *Watkins*, 269 F. App'x at 459. He neither theorized, nor did the Fifth Circuit or the Southern District of Texas create, a claim such as DeWitt urges.

While there may be no failure to enforce internal policies claim as DeWitt has described it under Texas law, to the extent DeWitt attempts to bring a claim for breach of the duty of good faith and fair dealing, Texas law does recognize such a claim but does not permit it in the employment context. *City of Midland v. O'Bryant*, 18 S.W.3d 209, 213-16 (Tex. 2000).

Accordingly, DeWitt has not stated a claim for "Failure to Enforce Internal Policies." ECF No. 7-1 at 17. Chief Judge O'Connor should dismiss this claim.

### K.    Dismissal Recommendations

Because the statute of limitations bars DeWitt's claims for IIED, trespass to chattels and negligence / conversion, Chief Judge O'Connor should dismiss these claims without leave to amend. Chief Judge O'Connor should also dismiss DeWitt's claim for criminal harassment without leave to amend because it is not actionable, and DeWitt's claim for "Failure to Enforce Internal Policies" because it does not exist under Texas law. Judge O'Connor should dismiss DeWitt's breach of contract claim because further amendment would be futile as DeWitt has not pleaded any facts suggesting a plausible basis to suggest a contract, implied or otherwise, that any defendant breached.

Further, because Title VII does not impose individual liability, Chief Judge O'Connor should dismiss DeWitt's Title VII claims against Lafferty, Wise, Trexler, Morgan, and Braun without leave to amend. As for DeWitt's Title VII claims against Trinity and Burris, and DeWitt's Sarbanes-Oxley claims, because DeWitt has not demonstrated in his pleadings that he exhausted his administrative remedies, Chief Judge O'Connor should dismiss those claims but grant DeWitt leave to amend his amended complaint to plead facts showing timely compliance with the relevant administrative procedures, if he can do so. If DeWitt does not amend his amended complaint to state facts showing that he exhausted his administrative remedies regarding Title VII claims and Sarbanes-Oxley claims, Judge O'Connor should dismiss those claims without prejudice. When a court dismisses a claim for failure to exhaust administrative remedies, the dismissal is without prejudice, as the claimant has the right to return to court after exhausting applicable administrative remedies if possible. *Taylor v. United States Treasury Dep't*, 127 F.3d 470, 478 (5th Cir. 1997); *Martin K. Eby Const. Co., Inc. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 n.5 (5th Cir. 2004) (citing *Taylor*, 127 F.3d at 478).

Finally, as mentioned previously, the applicable statute of limitations bars any claim for defamation predicated on the September 20, 2022 termination call, and DeWitt does not plausibly suggest how any defendant other than Jennifer Braun (and thus Trinity, her employer) might have defamed him inside of a year from the time he brought his claim. Accordingly, Chief Judge O'Connor should dismiss DeWitt's defamation claim against Jake Lafferty, Derek Wise, Ethan Trexler, and Megan Morgan. He likewise should dismiss DeWitt's defamation claim against Jennifer Braun and Trinity with leave to amend his amended complaint to plead facts addressing the legal deficiencies with this claim identified above.

As to the claims to which Chief Judge O'Connor permits DeWitt to amend, the Court should order him to file a Second Amended Complaint within fourteen days after Chief Judge O'Connor enters his order accepting this Findings, Conclusions, and Recommendation or such other date as he requires.

## IV.    CONCLUSION

For these reasons, the undersigned **RECOMMENDS** that Chief Judge O'Connor **DENY** Jennifer Braun's Motion to Dismiss for Lack of Personal Jurisdiction (ECF No. 16); **GRANT** Defendants' Motion to Dismiss for Failure to State a Claim (ECF No. 14) and **DISMISS** DeWitt's Title VII claims claim against Jake Lafferty, Derek Wise, Ethan Trexler, Megan Morgan, and Jennifer Braun; **DISMISS** DeWitt's Title VII retaliation claim and Sarbanes-Oxley whistleblower retaliation claim against Trinity and Burris and workplace harassment / hostile work environment claim against Trinity with leave to amend his amended complaint to plead facts demonstrating timely compliance with the relevant administrative procedures, and **DISMISS** those claims without prejudice if DeWitt does not amend his amended complaint to state facts showing that he exhausted his administrative remedies prior to filing his Title VII and Sarbanes-Oxley claims; **DISMISS** DeWitt's claim under the Texas Penal Code for criminal harassment against Jake Lafferty, Derek Wise, Ethan Trexler, Megan Morgan, and Jennifer Braun; **DISMISS** DeWitt's defamation claim against Jake Lafferty, Derek Wise, Ethan Trexler, Megan Morgan, Trinity, and Jennifer Braun with leave to amend his amended complaint to state facts addressing the legal deficiencies with this claim identified above;   **DISMISS** DeWitt's IIED, trespass to chattels, negligence / conversion, breach of contract, and "Failure to Enforce Internal Policies" claims.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions,

and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).

**SIGNED** on January 5, 2026.

Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE